```
                                                                    FILED
        UNITED STATES DISTRICT COURT                              NOV 0 6 2013
           DISTRICT OF SOUTH DAKOTA
              SOUTHERN DIVISION
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR. 13-40079-01 |
| Plaintiff, | * | |
| vs. | * | REPORT and RECOMMENDATION (Motion to Suppress, Doc. 17&19) |
| MARLENE MARIE AHLERS | * | |
| Defendant. | * | |

Pending is Defendant's Motion to Suppress (Doc. 17 and Doc. 19). A hearing was held on Friday, November 1, 2013. Defendant was personally present and represented by her counsel of record, Manuel DeCastro. The Government was represented by Assistant United States Attorney Jennifer Mammenga. Sioux Falls Police Detective Nick Cook testified at the hearing. Two Exhibits (the search warrant and the supporting affidavit) were received into evidence. Additionally, both parties have submitted briefs and oral argument was heard at the conclusion of the hearing. Based on a careful consideration of all of the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## RECOMMENDATION

It is respectfully recommended that Defendant's Motion to Suppress be **DENIED**.

## JURISDICTION

Defendant is charged in an Indictment with Possession of Firearms by a Prohibited Person in violation of 18 U.S.C. § 922(g)(3). The pending Motion to Suppress was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Schreier's Standing Order dated March 18, 2010.

## FACTUAL BACKGROUND

### 1. Detective Cook

Sioux Falls Police Detective Nick Cook investigated Marlene Ahlers. Cook's involvement in the investigation began in the fall of 2012. In the spring of 2012, however, the Sioux Falls Police

Department received some Crime Stoppers tips which were eventually tied to the Ahlers investigation.

In May, 2012 Crime Stoppers received a call regarding Troy Sorensen. The caller reported Mr. Sorensen lived on W. 5th Street and that the caller had seen Sorensen in possession of methamphetamine. Another Crime Stoppers tip was received in August, 2012 regarding narcotics activity and burglary activity involving Scott Howlett who the caller reported was an associate of Marlene Ahlers. The caller also indicated Howlett and Ahlers were heavy methamphetamine users and relayed information about Ahlers' criminal history. A third Crime Stoppers call was received in September, 2012. This Crime Stoppers caller also mentioned Sorensen and Howlett and their drug activity and that Ahlers was a known associate. All of these Crime Stoppers tips were anonymous and Cook knows nothing about their identity or reliability.

In October, 2012, Detective Cook and other members of the drug task force engaged in surveillance of Wayne Taylor's rural Minnehaha County residence.[1] On October 2, 2012, drug paraphernalia was found when Taylor was stopped for a traffic stop. The next evening (October 3) the officers again watched the Taylor residence. Two vehicles left. Because of the darkness and the rural setting, the officers could not get close enough to immediately identify the vehicles or the drivers as they left the Taylor residence. They did observe one of the vehicles slow in front of Ms. Ahlers' driveway.[2] There were no other residences in the vicinity. When the officers were able to get close enough, they determined the only vehicle Ms. Ahlers' driveway was a red truck that was registered to Ms. Ahlers.

On October 11, 2012 surveillance was again conducted on Taylor's residence. A vehicle leaving the residence was stopped and an occupant was arrested for possession of stolen firearms and illegal drugs, including methamphetamine. The occupant was transported to the Law Enforcement Center for an interview. Detective Cook assisted in the interview. The occupant (Source of Information # 1 --SOI #1) was known to Cook and provided information regarding narcotics activity

---

[1]Taylor's residence had previously been linked to methamphetamine activity.

[2]They could not see the vehicle turn in to the driveway because a hill blocked their view. Ms. Ahlers' residence is also in rural Minnehaha County.

2

in the Sioux Falls area. The occupant talked about activity that occurred at Taylor's home. He talked about a person he knew as Troy and identified Troy Sorensen from a photo that did not have anything on it indicating the person it depicted was Troy Sorensen. SOI #1 also discussed a female whose name began with "M" and identified Marlene Ahlers from an unmarked photograph as well. SOI #1 identified Sorensen and Ahlers as the people who brought methamphetamine to Taylor's house. Detective Cook knew SOI #1 had record of narcotics-related arrests. He had never before, however, used this person as an informant and knows nothing about SOI #1's reliability. On October 11, 2012 a traffic stop was also conducted on a vehicle leaving Taylor's residence in which Sorensen was a passenger. Nothing was found and no arrest was made.

Cook and another law enforcement officer conducted surveillance on Ahlers' residence on November 14, 2012. Within the first hour of surveillance, they observed a vehicle leave Ahlers' residence. They stopped the vehicle for an equipment violation. As the officers stopped the vehicle, one of the passengers (SOI #2) threw an item out of the window onto the shoulder of the road. Cook retrieved the item and recognized it to be a baggie containing methamphetamine. The baggie field tested positive for methamphetamine. The driver and SOI #2 were arrested on various narcotics charges. One of the other officers interviewed SOI #2. Cook observed the interview. SOI #2 indicated he/she had used methamphetamine while at Ahlers' home multiple times and that Ahlers had, in the past, paid him/her with methamphetamine in exchange for work performed at Ahlers' home. SOI #2 also indicated he/she had smoked methamphetamine at Ahlers' home two hours before the traffic stop. Cook knows nothing of SOI #2's prior criminal record. Cook had never used SOI #2 as an informant before, and knows nothing of his/her reliability.

Based on all the information gathered, Cook applied for and received a warrant to search Ahlers' home. Judge William Srstka issued the warrant. Cook does not remember how long Judge Srstka spent reading the affidavit in this instance but Judge Srstka typically spent between ten and fifteen minutes reading the supporting affidavit before issuing a warrant. Per his usual practice, Judge Srstka initialed the bottom of each page of the supporting affidavit to indicate he'd read that page.

3

## 2. The Affidavit and Warrant

Detective Cook's supporting affidavit and the search warrant were received into evidence under seal. (EX 1 and EX 2). Cook's testimony is consistent with the information contained in the supporting affidavit, but because Ahlers attacks the sufficiency of the affidavit and the resulting search warrant this review is confined to the four corners of the affidavit. Detective Cook's testimony is not pertinent to this review of the affidavit, except to note his concessions about the sources of information (SOI) to which reference is made in the affidavit and to note that Judge Srstka did not ask any questions. Each factual matter mentioned in this discussion is found in the affidavit.

Ahlers moves to suppress "all things seized" pursuant to the warrant because she asserts (1) the affidavit upon which the warrant was issued was insufficient as a matter of law; (2) the issuing judge incorrectly found probable cause for the issuance of the warrant; (3) the affidavit did not contain facts sufficient as a matter of law to establish probable cause; (4) the search warrant was invalid and improperly issued; (5) the affidavit does not show or attempt to show any relationship between the premises and the objects seized; and (6) the search of the premises pursuant to the warrant and the issuance of the warrant violated Defendant's rights under the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution. *See* Doc. 17 & 19. The Government resists.

## DISCUSSION

### Burden of Proof, Standard of Review

The burden of proof is on the defendant who seeks to suppress evidence. *United States v. Phillips*, 540 F.2d 319 (8th Cir.1976). "A movant seeking to suppress evidence under a regularly issued warrant has the burden to show that the warrant was issued without probable cause." *United States v. Sierra-Garcia*, 760 F.Supp. 252, 262 (E.D.N.Y. 1991) (citations omitted). The standard of proof is a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

### 1. Probable Cause

"Issuance of a search warrant must be supported by probable cause, and the existence of probable cause depends on whether, in the totality of the circumstances, there is a fair probability

4

that contraband or evidence of a crime will be found in a particular place." *United States v. Rodriguez*, 711 F.3d 928, 936 (8th Cir. 2013) (citations omitted). "The standard of probable cause for the issuing judge is whether, given the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998) (citations omitted). Probable cause is a "fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

When the issuing judge relies solely upon the supporting affidavit of the law enforcement officer seeking the warrant, only that information found within the four corners of the affidavit may be considered in determining the existence of probable cause. *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999) (citations omitted).[3] Whether an affidavit is sufficient to support a probable cause finding to issue a warrant is determined by considering the totality of the circumstances presented. *Illinois v. Gates*, 462 U.S. at 230. Sufficiency of the affidavit is not determined by a piecemeal approach, and the elements of the affidavit should not be read in isolation. *United States v. Sumpter*, 669 F.2d 1215, 1218 (8th Cir. 1982). "Applications and affidavits should be read with common sense and not in a grudging, hyper technical fashion." *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). A probable cause finding may be based upon hearsay from reliable persons, independently corroborated hearsay statements from confidential informants, and observations made by trained law enforcement officers. *Walden v. Carmack*, 156 F.3d at 870 (citations omitted). Likewise, "it is clear that an individual's prior criminal activities and record have a bearing on the probable cause determination." *United States v. Sumpter*, 669 F.2d 1215, 1222 (8th Cir. 1982).

Once a judge has issued a warrant upon a finding of probable cause, that finding deserves great deference. Therefore, the inherent assumption that the supporting affidavit is sufficient to provide probable cause is likewise accorded great deference. *Illinois v. Gates*, 462 U.S. at 236;

---

[3]In this case, Detective Cook testified he did not recall that Judge Srstka asked for any additional information. The four corners of the affidavit, therefore, govern the probable cause decision.

5

*Walden v. Carmack*, 156 F.3d at 870. "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed. 2d 684 (1965)(citation omitted).

### 2. The Reliability of the Anonymous Tips and the Confidential Informants

Ahlers asserts the supporting affidavit does not establish probable cause because it consists of information supplied solely from (1) anonymous Crime Stoppers tips and (2) confidential informants whose reliability is not explained in the affidavit and about which Detective Cook conceded during the hearing he knew nothing.

"The credibility and reliability of a person providing information to the police are important factors to be considered. They are not, however, separate and independent requirements to be rigidly exacted in every case." *United States v. LaMorie*, 100 F.3d 547, 553 (8th Cir. 1996)(citations omitted). Here, the officers received information from three anonymous Crime Stoppers calls. They also received information from two sources of information (SOIs) which were known to the officers, but not named in the affidavit. Detective Cook conceded during the hearing that he had never before used either of the SOI's and knew nothing of their reliability.

> Informant's tips doubtless come in many shapes and sizes and from many types of persons and may vary greatly in their value and reliability. As such, one simple rule will not cover every situation. Instead, when determining when an informant's tip supports a finding of probable cause, the Supreme Court has directed courts to engage in a 'totality of the circumstances' analysis, which permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip.
>
> In undertaking this analysis, the Supreme Court has recognized a distinction between a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, and an anonymous informant, who cannot be easily held responsible. This distinction is important, because although a tip received from a known informant will more readily support a finding of probable cause, a tip received from an anonymous informant requires 'something more,' usually in terms of independent police corroboration before probable cause may arise.

6

> In addition to there being a distinction between known informants and anonymous informants, there is also an important distinction between the two types of known informants; reliable informants and unproven informants. Reliable informants are individuals who have a 'track record of supplying reliable information' to law enforcement officers. Information supplied by such parties may be sufficiently reliable to support a probable cause finding... Unproven informants are individuals without a track record of supplying information to law enforcement officers. Though less reliable than informants with a proven record, unproven informants are more reliable than anonymous tipsters because the police can hold them responsible for false information. Nevertheless, information supplied by such individuals requires some independent verification to establish reliability. Independent verification occurs when the information (or aspects of it) is corroborated by the independent observations of police officers.

*United States v. Nolen,* 536 F.3d 834, 840 (8th Cir. 2008)(citations omitted, punctuation altered). The issue is whether there is sufficient independent verification to establish reliability for the Crime Stoppers (anonymous) and the two SOI's (unproven informants') tips to establish probable cause.

An anonymous tip standing alone is insufficient to establish probable cause. *United States v. Wells,* 223 F.3d 835 (8th Cir. 2000). When an anonymous Crime Stoppers tip is accompanied by corroboration that exhibits sufficient indicia of reliability, however, the Crime Stoppers tip can provide adequate probable cause. *Id.* at 839-40. Sufficient indicia of reliability can be shown by "firsthand information or intimate details that could provide a reliable basis for [the] purported knowledge." *Id. See also, United States v. Warner,* 894 F.2d 957, 960 (8th Cir. 1990) and *United States v. Jackson,* 898 F.2d 79, 81 (8th Cir. 1990) (anonymous citizen's tip that marijuana plants were growing inside defendant's house corroborated by officer checking utility records to confirm defendant's name and residence sufficient to establish probable cause).

The Crime Stoppers tips told the officers: (1) Troy Sorensen lived on W. 5th Street and had been involved in burglaries and meth sales; (2) Scott Howlett was associated with Marlene Ahlers and both were heavy users of methamphetamine. Marlene was arrested a few years ago for having a meth lab on her property. Marlene's main meth supplier is a guy named "Troy"; (3) Troy Sorensen is a meth dealer. He calls Scott Howlett when he is "holding" meth. Sorensen deals large amounts of meth that he gets from Wisconsin. Sorensen associates with Ahlers and Sorensen's hangout is Marlene Ahlers' house.

The unproven informants told the officers: (1) they had seen Ahlers and Sorensen together at Wayne Taylors' house, where narcotics use and sales occurred; (2) Ahlers was one of the people who brought methamphetamine to Taylor's residence; (3) Sorensen had been staying at the Taylor property in a camper; (4) Ahlers, Taylor and Sorensen were the meth dealers at Taylor's residence; (5) Taylor and Sorensen 'cooked' meth at Taylor's residence in the past, but hadn't not done so for a while because of law enforcement attention; (6) they had smoked methamphetamine with Ahlers at her home at least ten times; (7) they had seen Sorensen give Ahlers and others methamphetamine in Ahlers' home; (8) Ahlers used methamphetamine as a form of payment for work done by them in her home; (9) Sorensen drove a white and green mid 90's Ford pick up; (10) they received methamphetamine from Sorensen while he was staying in his camper at a campground.

Both the Crime Stoppers tipsters and the unproven informants linked Sorensen and Ahlers as associates and named them as methamphetamine users/suppliers. These tips are reliable and support a probable cause finding because they are mutually corroborative. *United States v. Keys*, 721 F.3d 512, 518 (8th Cir. 2013) (two cooperating sources identified the suspect "although neither source had a prior history of providing information to law enforcement, the receipt of consistent information from two separate sources is a form of corroboration."). In *Keys* the further confirmation by law enforcement of minor, innocent details (the suspect's vehicle and address) was enough to establish probable cause.

The officers conducted investigations of their own and verified the following information all of which either confirmed or was consistent with the information received from the informants: (1) Marlene Ahlers' address; (2) Marlene Ahlers has a criminal history including prior drug arrests; (3) Marlene Ahlers' vehicle registration and that her vehicle was seen leaving Wayne Taylor's residence; (4) Taylor was linked to methamphetamine activity in the area and had been arrested on drug charges after he was stopped for a traffic violation; (5) Troy Sorensen was also linked to Taylor's residence and was seen leaving Wayne Taylor's residence; (6) the pick up registered to Troy Sorensen is a green and white 1993 Ford; (7) surveillance conducted on Ahlers' home resulted in a traffic stop of a vehicle leaving her home. One of the passengers in the vehicle which was stopped threw methamphetamine out the car window and claimed to have smoked methamphetamine with Ahlers in her home two hours earlier.

8

Neither the Crime Stoppers' nor the unproven informants' information standing alone was enough to establish probable cause. Their mutually corroborative information, however, was confirmed by the officers' independent investigation. *United States v. Keys*, 721 F.3d 512, 518 (8th Cir. 2013). The nature of law enforcement's independent investigation is described in the affidavit. Considering the totality of the circumstances, and affording proper deference to the issuing judge, the affidavit in this case supported a finding of probable cause to issue the warrant.

### 3. The Good Faith Exception

Even if Cook's affidavit was insufficient to make a probable cause showing, the evidence need not be excluded if the law enforcement officers reasonably relied upon a facially valid search warrant. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3430, 82 L.Ed.2d 677 (1984). The reason for this "good faith exception" to the exclusionary rule is "penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Id.* at 468 U.S. 921. There are four situations in which an officer's reliance on a warrant is unreasonable: (1) the officer included information in the affidavit he knew was false or would have known was false, but for a reckless disregard for the truth; (2) the judge abandons his role and fails to act in a neutral and detached manner; (3) the affidavit is so lacking in probable cause it is objectively unreasonable for the officer to rely upon it; and (4) the warrant is so facially deficient that the officer cannot reasonably presume the warrant to be valid.

Ahlers contends the second situation applies, but has provided the court with no factual basis for her contention. In her brief, Ahlers asserts Judge Srstka acted as a mere "rubber stamp" and issued the warrant without question or hesitation. Although Cook testified he does not recall Judge Srstka asking any questions to supplement the information in the affidavit, he also testified that Judge Srstka usually takes between ten to fifteen minutes to read the affidavit (ample time to read the seventeen numbered paragraphs which constitute five full pages, single spaced). Additionally, Cook explained the illegible squiggles which appear at the bottom of each page are Judge Srstka's initials, which he traditionally placed to signify he'd read the page. There were no facts presented tending to show Judge Srstka abandoned his role or failed to act in a neutral and detached manner.[4]

---

[4] To make this showing, there must be some indication the judge was not only wrong, but that he also had a prejudice toward the defendant and/or was unable to act impartially. *United*

9

The good faith exception is not outcome determinative in this case because there was probable cause to issue the warrant. This section is included in the Report and Recommendation to indicate to any reviewing courts that, even if the probable cause issue had been decided the other way by this Judge, the outcome of this Report and Recommendation would have been the same based upon the *Leon* good faith exception.

## CONCLUSION

For the reasons more fully explained above, it is respectfully RECOMMENDED to the District Court that Defendant's Motion to Suppress (Doc. 17 & 19) be DENIED.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.

*Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990)

*Nash v. Black*, 781 F.2d 665 (8th Cir. 1986)

Dated this 6 day of November, 2013.

BY THE COURT:

John E. Simko
United States Magistrate Judge

---

*States v. Johnson*, 78 F.3d 1258, 1263 (8th Cir. 1996). In *Johnson* the defendant questioned the judge's impartiality because the defendant had publicly stated his belief the judge got his law degree out of a Cracker-Jack box and was admitted to the bar through bribery. The Eighth Circuit, however, was not convinced the judge was prejudiced or unable to act impartially. There has been no showing in this case of any previous interactions between Ahlers and Judge Srstka, or of any pre-existing prejudice which might bring Judge Srstka's ability to be impartial into question.