UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 13-40079-01-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER DENYING MOTION |
| | ) | TO SUPPRESS |
| MARLENE MARIE AHLERS, | ) | |
| | ) | |
| Defendant. | ) | |

**NATURE AND PROCEDURE OF THE CASE**

Defendant, Marlene Marie Ahlers, is charged with possession of firearms by a prohibited person in violation of 18 U.S.C. § 922(g)(3). Ahlers moves to suppress "all things seized" pursuant to a search warrant executed on her residence on November 27, 2012. The motion was referred to United States Magistrate Judge John Simko for a report and recommendation.

A hearing on Ahlers' motion to suppress was held before Magistrate Judge Simko on November 1, 2013. Nick Cook, a narcotics detective with the Sioux Falls Police Department and the officer whose affidavit served as the basis for the search warrant, testified. Detective Cook's affidavit and the search warrant were received in evidence. Based upon the testimony and exhibits received at the hearing, Magistrate Judge Simko issued a report and recommendation recommending that Ahlers' motion to suppress be denied because (1) there was probable cause to issue a search warrant because the

informants corroborated each other and the information was confirmed by independent law enforcement investigation; and (2) alternatively, the *Leon* good faith exception applies. Ahlers objects to the report and recommendation's conclusion that probable cause existed. For the following reasons, the court adopts the report and recommendation of Magistrate Judge Simko and denies Ahlers' motion to suppress.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C), the court should make a de novo review "of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." *Accord United States v. Benitez*, 244 F. App'x 64, 66 (8th Cir. 2007) ("If a party objects to the magistrate judge's report and recommendation with respect to a dispositive matter, the district court judge must conduct a *de novo* review of the disputed portion of the magistrate judge's report and recommendation."). Similarly, Federal Rule of Criminal Procedure 59 classifies a motion to suppress evidence as a dispositive motion that requires de novo review. Fed. R. Crim. P. 59(b)(1), (3). De novo review in the context of reviewing a magistrate judge's report and recommendation does not require a new evidentiary hearing and only means a district court "give[s] fresh consideration to those issues to which specific objection has been made by a party." *United States v. Raddatz*, 447 U.S. 667,

2

674-75 (1980) (internal quotations and citations omitted). The court has conducted a de novo review.

## FACTS

The pertinent facts are as follows:

On May 9, 2012, Sioux Falls police received an anonymous tip through Crime Stoppers that a man named Troy Sorensen was in possession of methamphetamine. The caller provided Sorensen's address. On August 18, 2012, Crime Stoppers received a second anonymous call. This caller reported that Scott Howlett and a man named Leroy were involved in burglary activity, that Howlett is friends with Ahlers, that Howlett, Leroy, and Ahlers are all heavy methamphetamine users, and that Ahlers' current methamphetamine supplier was named Troy. The second caller also noted that Ahlers had previously been arrested for manufacturing methamphetamine on her property. Crime Stoppers received a third anonymous call on September 9, 2012, in which the caller reported that Sorensen was dealing methamphetamine and that Ahlers was an associate of Sorensen.

On October 2, 2012, Detective Cook and others conducted surveillance of a home belonging to Wayne Taylor that had been linked to drug activity. That night, officers stopped Taylor after he left his residence for an equipment violation. During the stop, police seized a syringe which was later found to contain methamphetamine. On October 3, 2012, police again conducted

surveillance of Taylor's residence and saw two vehicles leave. One of the vehicles traveled towards Ahlers' residence. Although Detective Cook testified at the evidentiary hearing that he did not personally see the vehicle pull into the driveway at Ahlers' residence due to the darkness and the fact that police had to follow at a substantial distance in such a rural setting, the vehicle traveling from Taylor's residence slowed as it approached Ahlers' residence before disappearing behind a hill, and afterward the only vehicle in Ahlers' driveway was a red truck registered to Ahlers.

On October 11, 2012, a vehicle was stopped after leaving Taylor's residence. Police found drug paraphernalia and two stolen firearms. Detective Cook assisted in an interview of the occupant of the vehicle. The occupant described the drug activity taking place at Taylor's residence. Additionally, the occupant identified an unmarked photograph of Sorensen as a man named Troy, and an unmarked photograph of Ahlers as a woman whose name began with "M." The occupant stated that the two individuals he identified in the photos brought methamphetamine to Taylor's residence and that he had seen them there with methamphetamine in the past. In a separate traffic stop that same day, Sorensen was pulled over after he left Taylor's residence, but nothing was found during that stop.

Detective Cook and another officer conducted surveillance of Ahlers' residence on November 14, 2012. While police stopped a vehicle leaving the

residence for an equipment violation, one of the occupants threw an object from the vehicle's window. Detective Cook retrieved the object, which turned out to be a small bag of methamphetamine. Detective Cook observed an interview with the front-seat passenger who had thrown the methamphetamine from the vehicle. The passenger reported using methamphetamine with Ahlers at Ahlers' residence on November 14, 2012, that Sorensen had provided methamphetamine to Ahlers and other at Ahlers' residence, and that Ahlers had provided methamphetamine in the past in exchange for work done at her house. The passenger also described Sorensen's truck.

Based on that information, Detective Cook applied for a search warrant for Ahlers' residence. Judge William Srstka, a circuit court judge for the Second Judicial District of South Dakota, authorized the search warrant on November 21, 2012.

## DISCUSSION

Ahlers does not object to any of Magistrate Judge Simko's findings of fact. Ahlers only "objects to the overall legal conclusion that there was probable cause based on an affirmation for the search." Docket 34 at 2.[1] Ahlers asserts

---

[1] Ahlers does state at the outset that she "objects to the Magistrate's Report and Recommendation . . . as well as the findings, authorities, and legal conclusions that led the Magistrate to recommend that the Motion to Suppress be denied." Docket 34 at 1. But Ahlers does not provide any specific objections, with the exception of her objection to the legal conclusion that probable cause existed. Ahlers' blanket statement is not sufficiently specific to support any objections in addition to her specific objection to the finding of probable cause.

that the affidavit is based on testimony from anonymous callers and informants without any track record of reliability, and the affidavit therefore is insufficient to demonstrate probable cause. Docket 18 at 4. Ahlers also argues that the *Leon* good faith exception does not apply in this instance because Judge Srstka completely abandoned his judicial role. Docket 18 at 5-6.

I.  **Probable Cause**

" '[T]he existence of probable cause depends on whether, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *United States v. Rodriguez*, 711 F.3d 928, 936 (8th Cir. 2013) (quoting *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)). Probable cause is assessed " 'from the viewpoint of a reasonably prudent police officer acting in the circumstance of the particular case.' " *United States v. Seidel*, 677 F.3d 334, 338 (8th Cir. 2012) (quoting *United States v. Reinholz*, 245 F.3d 765, 766 (8th Cir. 2001)). A probable cause determination is based on a "common-sense reading of the entire affidavit." *Id.*

" 'When the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable

---

*See* Fed. R. Crim. P. 59(b)(2) (requiring written objections to be specific). Therefore, the court will only consider Ahlers' objection to Magistrate Judge Simko's probable cause finding and the related *Leon* good faith issue, as presented in her objection (Docket 34) and her original brief (Docket 18).

cause.' " *Solomon*, 432 F.3d at 827 (internal quotations omitted) (quoting *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999)). Because Judge Srstka did not hold an evidentiary hearing or ask Detective Cook any questions before issuing the warrant, this court's review will be limited to Detective Cook's affidavit.

"If the affidavit relies on information from an informant, 'the informant's reliability, veracity, and basis of knowledge are relevant to whether the affidavit provided probable cause to support the search.' " *Rodriguez*, 711 F.3d at 936 (quoting *Solomon*, 432 F.3d at 827). The Eighth Circuit recognizes three types of informants: reliable known informants, unreliable known informants, and anonymous informants. *United States v. Nolen*, 536 F.3d 834, 840 (8th Cir. 2008). "Reliable informants are individuals who have 'a track record of supplying reliable information' to law enforcement officers." *Id.* (quoting *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)). "Unproven informants are individuals without a track record of supplying information to law enforcement officers." *Id.* Unlike a known informant, an anonymous informant cannot be held responsible for supplying false information. *Id.*

Information from both anonymous informants and unreliable known informants requires some sort of independent verification or corroboration. *Id.* " 'Information may be sufficiently reliable to support a probable cause finding if . . . it is corroborated by independent evidence.' " *United States v. Keys*, 721

F.3d 512, 518 (8th Cir. 2013) (quoting *Williams*, 10 F.3d at 593. " 'If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable.' " *Id.* (quoting *Williams*, 10 F.3d at 593). Verification of small or innocent details can provide sufficient corroboration to establish probable cause. *Rodriguez*, 711 F.3d at 936.

    The three calls to Crime Stoppers were all made by anonymous informants, and each alone would not be reliable enough to establish probable cause. The two face-to-face informants were known but unreliable because they had never provided information to law enforcement before, and they would also require independent verification or corroboration before they, standing alone, could support probable cause.

    According to Detective Cook's affidavit, the first anonymous caller stated that Troy Sorensen had bulk bags of methamphetamine and a digital scale in his residence. The caller also provided Sorensen's address, which Detective Cook verified as a previously listed address for Troy Allen Sorensen. The second anonymous caller stated that Ahlers was a heavy methamphetamine user and that her supplier was a man named Troy. The second caller also noted Ahlers' criminal history, which Detective Cook verified. The third caller also linked Ahlers to Sorensen and his methamphetamine activities. The first unreliable

known informant reported personally witnessing Ahlers bring methamphetamine to Taylor's residence and identified unmarked pictures of both Ahlers and Sorensen. The second unreliable known informant admitted to using methamphetamine with Ahlers at Ahlers' residence immediately before being arrested and reported personally witnessing Ahlers exchange methamphetamine for work done at her residence. The second unreliable known informant also identified unmarked photos of both Ahlers and Sorensen and accurately described Sorensen's truck. The affidavit also includes Detective Cook's report that he followed a vehicle from Taylor's residence to the vicinity of Ahlers' residence.

All the tips provided to law enforcement in this case are mutually corroborative. *See Keys*, 721 F.3d at 518 ("[T]he receipt of consistent information from two separate sources is a form of corroboration."). The tips tie Ahlers to Sorensen, and the tips link Ahlers to methamphetamine. Detective Cook also verified some details provided in the tips, such as Sorensen's address and Ahlers' criminal history. Detective Cook also personally observed details linking Ahlers to criminal methamphetamine-related activity, such as Taylor's possession of methamphetamine paraphernalia combined with the likely presence of Ahlers at Taylor's residence.

The two known informants could both be held accountable for any misinformation they gave to investigators because their identities are known.

9

Furthermore, Detective Cook had an opportunity to personally observe the two known informants, bolstering his decision to rely on the information they provided. *See United States v. LaMorie*, 100 F.3d 547, 553 (8th Cir. 1996) ("[P]ersonal contact with an informant can strengthen an officer's decision to rely on the information provided . . . ."). The two known informants also gave statements against their penal interests, a fact which enhances the credibility of their statements. *See id.* ("[S]tatements against the penal interest of an informant naturally carry considerable weight."). Finally, the two known informants both testified to facts of which they had first-hand knowledge. *See United States v. Nieman*, 520 F.3d 834, 840 (8th Cir. 2008) ("[M]uch of the informants' information was first-hand and was corroborated by information from other [confidential informants]."). Based on the mutual corroboration of all the tips, the corroborating observations and independent investigation of law enforcement, and the fact that the two known informants gave in-person statements against their penal interests about facts of which they had personal knowledge, the affidavit contained enough information to establish probable cause to issue the search warrant.

## II.  *Leon* Good Faith Exception

In the alternative, the court considers the *Leon* good faith exception. If law enforcement obtains a facially valid search warrant and acts within the scope of that warrant, the Fourth Amendment does not require suppression of

evidence discovered pursuant to that warrant even if it is later determined that the warrant was invalid. *United States v. Leon*, 468 U.S. 897, 921-24 (1984). The Eighth Circuit has recognized four circumstances that preclude a finding of good faith reliance on a warrant: (1) when law enforcement intentionally or recklessly includes false information in the warrant application and thereby misleads the issuing judge; (2) when the issuing judge wholly abandons the neutral and detached role required of a judicial officer; (3) when the affidavit is so lacking in probable cause that it would be entirely unreasonable for an officer to rely on it; and (4) when the warrant is so facially deficient that no officer could reasonably presume it to be valid. *United States v. Cannon*, 703 F.3d 407, 412 (8th Cir. 2013) (citing *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011)).

  Ahlers argues that the second scenario has occurred in this case, and that Judge Srstka abandoned his judicial role by acting as a mere rubber stamp for law enforcement. Docket 18 at 5-6. Ahlers does not provide any details supporting this claim. Instead, she argues that Judge Srstka acted as a rubber stamp because he issued the warrant without hesitation even though the affidavit lacked probable cause.

  First, Detective Cook testified that Judge Srskta usually took ten to fifteen minutes to read an affidavit before issuing a search warrant, although he did not recall how long Judge Srstka took in this particular case. Second,

11

Detective Cook stated that Judge Srstka initialed each page after reading it, and Detective Cook identified the marks on the bottom of each page of the affidavit as Judge Srstka's initials. In the absence of any facts tending to show that Judge Srstka showed prejudice to Ahlers or that he somehow acted in a biased manner, the court finds that Judge Srstka did not abandon his judicial role. Therefore, even if the affidavit lacked probable cause, the exclusionary rule would not require suppression of the evidence seized pursuant to the warrant.

## CONCLUSION

Detective Cook's affidavit, read as a whole, provides information which is sufficient to show that there was a fair probability that contraband or evidence of a crime would be found in Ahlers' residence. Even if the affidavit lacked probable cause, law enforcement relied on it in good faith in conducting their search. Accordingly, it is

ORDERED that the report and recommendation of the magistrate judge (Docket 33) is adopted, and defendant's motion to suppress (Dockets 17 and 19) is denied.

Dated December 18, 2013.

                    BY THE COURT:

                    /s/ *Karen E. Schreier*
                    KAREN E. SCHREIER
                    UNITED STATES DISTRICT JUDGE